# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD BANKS,** | : | **CIVIL NO. 3:CV-10-1480** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **SUPERINTENDENT JEFFREY A.** | : | |
| **BEARD, et al.,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Plaintiff Ronald Banks, a state inmate presently incarcerated at the State Correctional Institution at Retreat ("SCI-Retreat"), Hunlock Creek, Pennsylvania, initiated this civil rights action pursuant to 42 U.S.C. § 1983 on July 19, 2010. The matter is proceeding *via* an amended complaint (Doc. 37) filed on July 14, 2011. Presently before the court are plaintiff's motions to compel discovery (Doc. 80) and for sanctions (Doc. 82). For the reasons set forth below, the motion to compel will be granted in part and denied in part and the motion for sanctions will be denied. Also pending are numerous motions by plaintiff for an enlargement of time to file a brief in opposition to defendants' motion for summary judgment and a statement of material facts. (Doc. 109-119.) These motions will be granted.

## I. Background

Plaintiff alleges that while incarcerated at the State Correctional Institution at Rockview ("SCI-Rockview"), Bellefonte, Pennsylvania, prison officials identified his mental health issues, and recommended that he be transferred to SCI-Retreat and placed in the "Secure Special Needs Unit" (hereinafter referred to 'S.S.N.U.')," a "specialized mental

health treatment program to assist in returning to a general population special needs unit (hereinafter referred to "S.N.U."). . . ."  (Doc. 37, at 14.)  On April 18, 2009, he was permanently transferred to SCI-Retreat and placed in the S.S.N.U.  (Id.)

In the "III. Introduction" section of the amended complaint, plaintiff sets forth the following:  "State prison prisoner's plaintiff is an Sunni Muslim of the Islamic faith and all other similarly situated prisoners brought multiple claims in a civil rights action under 42 U.S.C. § 1983 against D.O.C.'s defendants denying to serve two major religious holidays feasts in a High-Security Level 5 Housing Unit area and general population to indigent Muslims [incarcerated at SCI-Retreat] pursuant to D.O.C.'s Memorandum which prohibit those indigent Muslim's ability to participate in the Eid-al-Fitr and Eid-al-Adha Feasts in violation of their 1st Amendment, Establishment Clause, Equal Protection Clause of 14th Amendment, as well as their rights under Religious Land Use and Institutionalized Person Act of 2000."  (Doc. 37, at 9.)  In the section "VII Introduction," he also challenges the "total ban on religious non-alcohol prayer oils."  (Id. at 35.)

## II.   Motion to Compel

### A.   Legal Standard

In addressing discovery, Federal Rule of Civil Procedure 26(b) provides, in relevant part, as follows:

(b) Discovery Scope and Limits.

> (1) *Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including

the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

(2) *Limitations on Frequency and Extent*.

(C) When Required. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the discovery in resolving the issues.

Issues relating to the scope of discovery permitted under the rules rest in the sound discretion of the Court, <u>Wisniewski v. Johns–Manville Corp.</u>, 812 F.2d 81, 90 (3d Cir. 1987), and any decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion. <u>Marroquin-Manriquez v. I.N.S.</u>, 699 F.2d 129, 134 (3d Cir. 1983).

Although the scope of relevance in discovery is broader than that allowed for evidentiary purposes, it is not without its limits. <u>Stabilus v. Haynsworth, Baldwin, Johnson & Greaves, P.A.</u>, 144 F.R.D. 258, 265 (E.D.Pa.1992) (citations omitted). Courts will not permit

discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information. <u>Goodman v. Wagner</u>, 553 F. Supp. 255, 258 (E.D. Pa. 1982). However, the burden is on the objecting party to demonstrate in specific terms why a discovery request is improper. <u>Hicks v. Big Brothers/Big Sisters of America</u>, 168 F.R.D. 528, 529 (E.D. Pa. 1996); <u>Goodman</u>, 553 F. Supp. at 258. The party objecting must show that the requested materials do not fall "within the broad scope of relevance . . . or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. . . ." <u>Burke v. New York City Police Dep't</u>, 115 F.R.D. 220, 224 (S.D.N.Y. 1987).

**B.    Analysis**

   1.   <u>First Request for Production of Documents</u>

   *a.    Duties and Responsibilities of Defendant Beard*

Plaintiff seeks "all documents that contain, mention, construe, or refer to the duties and responsibilities with specificity of Defendant Beard, as Pennsylvania Department of Corrections ("D.O.C.") employe [sic] at Central Office." (Doc. 80, at 2.) Defendants notified plaintiff that no such documents exist. (Doc. 96, at 14; Doc. 99-1, at 2.) Plaintiff now seeks to compel the production of such documents arguing that they "are vital and relevant discovery of admissibility of character evidence. . . ." (Doc. 81, at 3.) Defendants respond to plaintiff's motion arguing that they are unable to produce documents that do not exist. This Court cannot compel the production of documents that do not exist. <u>Susquehanna Commercial Fin., Inc. v. Vascular Res., Inc.</u>, No. 09-2012, 2010 WL 4973317, at *6 (M.D.Pa.

Dec. 1, 2010).

> b.    *Mental Health Treatment Records, Transfer Petitions and Rationale Letters*

In his third request, plaintiff seeks to compel the production of specific portions of his mental health records from January 1, 2005, through December 1, 2009, "as a means of proving plaintiff's credibility based on truthfulness, personal knowledge and belief that the Defendants' certified licensed psychiatrists has diagnosed him as a 'schizoaffective disorder' and among other serious mental illnesses disorders which has continued throughout his incarceration in the Pennsylvania prison system." (Doc. 81, at 4.) Defendants initially declined to produce these records based on security, confidentiality and relevance. (Doc. 96, at 15; Doc. 99-1, at 4-5.) Plaintiff contends that because "he has put into issue" his mental health, defendants cannot rely on confidentiality or privilege. (Doc. 81, at 4-5.) In their opposition to the motion to compel, defendants do not argue confidentiality or privilege. (Doc. 96.) They do, however, maintain that the documents are irrelevant because the lawsuit does not challenge plaintiff's mental health treatment in any way and contest production on the grounds of security concerns. (<u>Id.</u> at 15-16.)

In request twenty-one, plaintiff seeks production of specific portions of transfer petitions and rationale letters regarding his transfer from SCI-Rockview to SCI-Retreat in April 2009. (Doc. 80, at 6; Doc. 99-1, at 13.) Defendants objected because the documents "contain entries and narratives covering mental status, reasoning capacity, emotional state, social adaptability, judgment ability, and the results of clinical tests." (Doc. 99-1, at 13.)

They also objected on the ground that the documents are irrelevant and not likely to lead to admissible information relative to this action. (<u>Id.</u> at 14.) In seeking to compel production, plaintiff contends that the documents "are vital and relevant discovery of admissibility of credibility evidence based on truthfulness, personal knowledge and belief that defendants has transferred him from S.C.I.-Rockview to S.C.I.-Retreat to receive a specialized mental health treatment program to aid him back into general population special needs unit. . . ." (Doc. 81, at 10.) Defendants reassert their security objection and point out that plaintiff is not asserting a claim challenging his April 2009 transfer.

The Court agrees that the plaintiff's mental health records, transfer petitions, and rationale letters are irrelevant to the religion-based claims for which he is seeking relief. Further, review of the declaration of John E. Wetzel, Secretary of the Pennsylvania Department of Corrections ("DOC"), reveals that the security concerns related to any mental health records and the transfer petitions and related documentation are justified.

With respect to the mental health records, were they made available to inmates or the public, DOC professionals would tend to refrain from entering candid opinions and evaluations. (Doc. 99-2, at ¶ 16.) "Consequently, decision-makers would not have the benefit of honest observations from professionals in the filed." (<u>Id.</u> at ¶ 17.) Moreover, "if an inmate knows how DOC staff will evaluate him and how particular behaviors are likely to be interpreted, he is capable of manipulating the resulting determination," which could lead to inaccurate assessments, improper institutional placements, and possible premature release from custody. (<u>Id.</u>) Based on the foregoing, defendants will not be compelled to produce any

portion of plaintiff's mental health record. However, to the extent that plaintiff is attempting to establish that he has been diagnosed by prison psychiatrists with a "schizoaffective disorder" or other serious mental illnesses or disorders, defendants will be directed to notify the Court of whether they would be willing to stipulate to such diagnoses.

As concerns the transfer petitions and related documentation, Secretary Wetzel explains that "a transfer petition is an administrative investigation to determine whether a particular inmate is a suitable candidate to be transferred to another facility or setting." (Doc. 99-2, ¶ 10.) Accompanying documentation "contains analysis and evaluation of the specific inmate's programming and prison adjustment, including security classification information, substance abuse, mental health or medical history and needs, programming needs, behavioral adjustment, whether separations exist for that inmate, criminal history record information, and Department staff rationale leading to the particular request for transfer." (Id. at ¶ 12.) This information may only be accessed by individuals with appropriate clearance. (Id. at ¶ 13.) Secretary Wetzel represents that disclosure of the methods and factors compiled and reviewed in transfer petitions poses a number of security risks including, *inter alia*, that it may allow an inmate to manipulate behavior and procedures to obtain future favorable transfer decisions, provide access to confidential investigatory information compiled by the DOC, spark possible retaliation by inmates against staff upon being made aware of unfavorable information, result in release of confidential mental health, medical substance abuse, sexual or violent histories to members of the public and other inmates, and facilitate usage of the information to harass or assault an inmate that may be considered vulnerable based on mental health history, medical

7

concerns or sexually violent behaviors.  (<u>Id.</u> at ¶ 14 (a), (c), (d), (g), (h).)  Because it is clear

that providing plaintiff with the transfer petition would create a security risk, plaintiff's

motion will be denied as to this request.  <u>See</u> <u>Mearin v. Folino</u>, No. 11-571, 2012 WL

4378184 at *2 (W.D.Pa. Sept. 24, 2012) (noting that in a prison setting an inmate's request for

certain information can raise security concerns and implicate a legitimate governmental

privilege requiring confidentiality).

### c.    *D.O.C. Code of Ethics, DC-174, Handbook/Manual*

In his fifth request, plaintiff seeks production of the "D.O.C. Code of Ethics, DC-174,

Handbook."  (Doc. 80, at 3.)  Defendants responded that they were unable to produce the

handbook because they were unaware of the existence of a DC 174 Handbook.  (Doc. 96, at

13, n. 11; Doc. 99-1, at 6.)  However, plaintiff attached to his motion to compel a cover page

of an undated version of the DOC Code of Ethics, which is identified as DC-174 in the bottom

left-had corner.  (Doc. 81, at 46.)  This served to clarify plaintiff's request.  (Doc. 96, at 13, n.

11)  As a result, defendants have provided to plaintiff a copy of the Code of Ethics for the

relevant time period.   (Doc. 99-8, at 1-58.)

### d.    *Other Inmate's Account Statements*

Plaintiff requests the prison inmate account statements of four inmates covering

various dates from November 2005, through January 2009.  (Doc. 80, at 3-5; Doc. 99-1, at 11-

12.)  Defendants objected on the grounds that the account statements of other inmates are

irrelevant and not likely to lead to admissible information and that account information

regarding other inmates is confidential.  (Doc. 99-1, at 11-12.)  Plaintiff seeks to compel the

production of the account statements "which [he contends] are vital and relevant discovery of admissibility of credibility evidence as a means of proving plaintiff's credibility based on truthfulness, personal knowledge and belief that the defendants did allow indigent Muslim prisoners to be placed in debt within their prison accounts to participate in a feast. . . ." (Doc. 81, at 8.) Defendants maintain their position that other inmates' account information is irrelevant and confidential. (Doc. 96, at 14.) They further argue that release of such information could jeopardize prison security.

The Court is persuaded by defendants' argument that such information regarding other inmates' accounts is irrelevant to the question of whether plaintiff's constitutional rights were violated and, therefore, not subject to production. However, even if the account statements were deemed relevant, other concerns advanced by defendants weigh against compelling production. For instance, according to the Wetzel declaration, inmates are not permitted to access or possess records related to other inmates because the DOC defines them as contraband. (Doc. 99-2, at 19, citing DC-ADM-003, "Release of Information Policy," Section IV, Section A, 5 stating that "[a]n inmate is prohibited from receiving inmate information pertaining to another inmate other than him/herself," and the 2009 Inmate Handbook, p. 27, §D(3)(o).) Wetzel also advances a compelling security concern in that if an inmate is aware of certain information about another inmate, such knowledge "can be used to manipulate, harass, blackmail, or assault that inmate, thereby creating a substantial risk of physical harm to the subject inmate and any staff who intervene." (Doc. 99-2, ¶ 20.)

2.    Second Request for Production of Documents

9

*a.* *Indigent Muslim Prisoners*

Plaintiff seeks "documents that evidence, contain, mention, constitute, refer or relating to lists, files, logs or written notes in any way to indigent Muslim prisoners who observed Ramadan and who have insufficient fund [sic] could not participate in the two Islamic Eids feasts, by [names] and [prison numbers] at S.C.I.-Retreat, during the years of 2009 and 2010." (Doc. 80, at 8.) Defendants notified plaintiff that no such documents exist. (Doc. 96, at 14.) Plaintiff seeks to compel the production of such documents arguing that "the value of these names & prison numbers of indigent Muslim prisoners is relevant to plaintiff's claim and defense." (Doc. 89, at 8.) Defendants respond to plaintiff's motion arguing that they are unable to produce documents that do not exist. As noted *supra*, this Court is unable to compel the production of documents that do not exist. Susquehanna Commercial Fin., Inc., No. 09-2012, 2010 WL 4973317, at *6.

### b.     Use of Religious Items

In his third request, plaintiff seeks "[a]ll documents that evidence, contain, mention, constitute, refer to relate to D.O.C. Memorandums, Directives, Procedure Manuals, Rules or Local Procedures in any way allowed to Christians, Jewish, Catholic, Native American and Muslim prisoners to use religious items consistent with the security needs and orderly administration at S.C.I.-Retreat, during religious services." (Doc. 99-3, at 3.) Defendants provided plaintiff with a copy of "DC-ADM 819, Religious Activities." (Id.) In the motion to compel, plaintiff asserts that defendants "knowingly neglected to produce discovery information and to respond to plaintiff's specific discovery requests. . . ." (Doc. 80, at 9.) Because defendants have, in fact, responded to the discovery request by providing plaintiff with a copy of DC-ADM 819, Religious Activities, the motion will be denied as to this request.

### c.     Grievances Based on Religious Issues

Plaintiff requests "all documents that evidence, contain, mention, constitute, refer or related to any computerized print-out [dates] and numbers of grievances religious issues of the concern filed by prisoners [names] and [prison numbers] at S.C.I.-Retreat . . . regarding any religious special foods, religious items, religious services, and religious accommodations requests during the years of 2007, 2008, 2009, and 2010." (Doc. 99-3, at 4.) Defendants objected to production contending that the grievances of other inmates are irrelevant and, also, that the DOC does not maintain a record of grievances under these categories, but advised plaintiff that SCI-Retreat received 42 grievances filed under the category "religion" from

2007 through 2010.  (Id.)  Plaintiff seeks to compel production of the documents arguing that they are relevant to his claim.  (Doc. 80, at 11.)  Defendants simply respond by stating that "plaintiff did not request any further information regarding these 42 grievances."  Plaintiff is clearly seeking documentation "regarding any religious special foods, religious items, religious services, and religious accommodations requests during the years 2007, 2008, 2009 and 2010."  While the Court agrees that the grievances of other inmates are irrelevant, because of the small number of grievances involved, defendants will be directed to provide plaintiff with a list containing a breakdown of the forty-two grievances, by category (religious special foods, items, services and accommodations) and year.

        3.      <u>Third Request for Production of Documents</u>

        *a.*      *Food Expenditures and General Fund Budget*

In request numbers 1, 13, and 14, plaintiff seeks documents related to "food expenditures cost budget," "Advancement Accounts of the General Fund budget," and the "General Fund budget."  Defendants objected to these requests because the information sought is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and the burden and expense of obtaining the information outweighs its likely benefit.  (Doc. 99-4, at 1, 7.)  Plaintiff seeks to compel production stating that the information is relevant to his claim and defense and not privileged and confidential.  (Doc. 80, at 12, 14, and 15.)  Defendants reiterate their original objections.  The Court questions the relevance of such documents and finds that even if they were relevant, the burden and expense of producing them outweigh any benefit.

*b.*     *Religious Accommodation Forms*

In his seventeenth request, he seeks " 'DC-52, Evaluations of Requests for Religious Accommodation Forms' filed by the Defendants McGrady, Hoover and Ritchey at SCI-Retreat, including . . . any and all the defendants' 'written comment(s)' for disapproval of Plaintiff's request for religious accommodations during the years of 2009 and 2010." (Doc. 99-4, at 9.) Defendants objected to producing all DC-52 evaluations as overly broad, irrelevant, and burdensome. (Id. at 9-10.) They did, however, produce plaintiff's relevant grievances and all related responses and appeals. (Id.) Plaintiff seeks to compel production of these evaluations arguing that they "are vital and relevant discovery of admissibility of credibility evidence . . . " and are able to be produced by "a qualified Inmate Services Director who is skillful and trained in technicalities of organizing, and is primary [sic] responsible for maintaining all records for final approval/disapproval of prisoner's requests for religious accommodations." (Doc. 81, at 23.)[1] Defendants again assert that the request is overly broad, irrelevant, and burdensome. (Doc. 96, at 22.) In support of their position, defendants supply the Court with the declaration of Reverent Ulrich Klem, the DOC's Bureau of Treatment Services Administrator of Religion and Volunteer Services. (Doc. 99-9, ¶ 1.) Reverend Klem administers the chaplaincy and volunteer programs in all twenty-seven DOC correctional institutions. (Id. at ¶¶ 2-3.) He also chairs the Department's Religious

---

[1]In his motion to compel, plaintiff identifies the documents he seeks as "DC-53, Evaluations of Requests for Religious Accommodation Form" as opposed to a DC-52. (Doc. 81, at 23-24.)

Accommodation Review Committee and is responsible for maintaining the records regarding the DC-52, Evaluation of Requests for Religious Accommodation forms. (Id.) He indicates that between 2009 and 2010, his office processed 2886 requests for religious accommodations forms and that combing through them to identify SCI-Retreat inmates, to retrieve the forms, copy them, and then return them to their original location in the Bureau of Treatment Services would require an investment of substantial man hours. (Id. at ¶¶ 4-6.) In addition, the requests contain the identity of seven employees who vote on the requests. (Id. at ¶ 7.) "These identities are confidential and it would take substantial time to review the forms and then redact the identities of these employees." (Id. at ¶ 7.) Based on the declaration of Reverend Klem, it is clear that to require production of the requested DC-52 requests would be overly burdensome. Consequently, the motion will be denied as to this request.

4. First Set of Interrogatories

a. *Misconducts for Misuse of Religious Prayer Oils during Friday Jumu'ah Congregational Prayer Services*

In his seventeenth interrogatory, plaintiff asked defendants to "[i]dentify any and all the [names] and [dates]] of each and every general population prisoner at S.C.I.-Retreat, who has received a "Disciplinary Misconduct Report" or been disciplined for misusing of religious non-alcohol prayer oils during Friday Jumu'ah congregational prayer service." (Doc. 99-5, at 13.) Defendants objected stating that the information sought was irrelevant, that they did not maintain records under such a category, and that to produce them would be unduly burdensome because they would be required to review all misconducts. In his motion to

14

compel, plaintiff argues that the information sought is vital and relevant. (Doc. 81, at 25.)

Defendants counter by reiterating that the interrogatory seeks irrelevant information, that all

SCI-Retreat misconducts would have to be searched "because the records are not maintained

in a way that allows them to be searched for this issue." (Doc. 96, at 25.) The Court agrees

with defendants that the information sought is irrelevant. Further, requiring a search of all

misconducts would be overly burdensome.

> b.    *Commissary Products that Contain Flammable Substances*

Plaintiff requested a list of all general population SCI-Retreat commissary products

that contain flammable substances. (Doc. 99-5, at 18.) Defendants refused to respond on the

basis that it sought irrelevant information. Plaintiff seeks to compel a response on the grounds

that an issue has been raised by the response to the Eighth Interrogatory, to wit, "SCI-Retreat

prohibited use of oils due to inmate's [sic] stealing the oil and then selling it on the blocks and

potentially using it to mask the scent of illegal substances." (Doc. 99-5, at 8.) Defendants

respond to the motion stating that "[w]hether or not the commissary sells items containing

flammable substances is wholly irrelevant to plaintiff's claims." (Doc. 96, at 25.) The Court

agrees. No further response will be required of defendants.

> 5.    Second Set of Interrogatories

> a.    *Security Level 5 Housing Unit and General Population Muslim*
> *Inmates Placed in Debt Due to Payment for Islamic Eid Feasts*

Plaintiff seeks the names of indigent Muslim prisoners who have incurred a debt due to

participation in Islamic Eid Feasts. (Doc. 99-6, at 3.)  Defendants declined to provide the

information citing inmate confidentiality issues. They also contended that a response would be overly broad and unduly burdensome. Plaintiff seeks to compel a response by on the ground that the information is relevant and does not raise any confidentiality concerns. (Doc. 80, at 19-20.) Defendants maintain their position concerning confidentiality and argue that the actual identity of these inmates is irrelevant to plaintiff's claim. (Doc. 96, at 25.) They further state that it would be unduly burdensome in that "it would require a search of the financial records of all Muslim inmates that were at SCI-Retreat in 2007 and 2008. This search would only be possible after it was determined which inmates were at SCI-Retreat during 2007 and 2008, and, of those inmates, which were Muslim." (Id.)

The Court is persuaded by defendants' argument that such information regarding other inmates' accounts is irrelevant to the question of whether plaintiff's constitutional rights were violated and, therefore, no further response is necessary. However, even if the names of the inmates were deemed relevant, other concerns advanced by defendants weigh against compelling a further response. For instance, as noted *supra*, according to Secretary Wetzel's declaration, inmates are not permitted to access or possess records related to other inmates because the DOC defines them as contraband. (Doc. 99-2, at 19, citing DC-ADM-003, "Release of Information Policy," Section IV, Section A, 5 stating that "[a]n inmate is prohibited from receiving inmate information pertaining to another inmate other than him/herself," and the 2009 Inmate Handbook, p. 27, §D(3)(o).) Wetzel also advances a compelling security concern in that if an inmate is aware of certain information about another inmate, such knowledge "can be used to manipulate, harass, blackmail, or assault that inmate,

16

thereby creating a substantial risk of physical harm to the subject inmate and any staff who intervene." (Doc. 99-2, ¶ 20.)

      6.    <u>Third Set of Interrogatories</u>

      *a.*    *List of General Population Indigent Muslim Prisoners*

In his second interrogatory, plaintiff seeks a list identifying "each and every General Population indigent status Muslim prisoners [sic], who has insufficient funds was prohibited from receiving any optional menu item(s) of the two major holidays Islamic Eid meals trays during years of 2009 and 2010." (Doc. 99-7, at 2.) Defendants declined to respond on the grounds that the identity of other indigent inmates housed in General Population is irrelevant and discovery of this information is not likely to lead to the discovery of admissible evidence. (<u>Id.</u>) In his motion, plaintiff states that such a list is relevant to his claim and defense. (Doc. 80, at 21.) He further argues that he is aware that such records are kept because he has been provided with information from 2007 and 2008 in response to an Inmate's Request to Staff Member. (Doc. 81, at 13; Doc, 81, at Exhibits E and F.) Defendants maintain that the information sought is irrelevant.

There is no indication that the list sought is relevant to the subject matter of plaintiff's lawsuit. Consequently, defendants will not be required to respond. And, to the extent that plaintiff relies on the response to his "Inmate's Request to Staff Member" attached to his supporting brief to demonstrate that such records are kept, he is mistaken in that the list generated is a list of inmates deductions, debt payments and miscellaneous deductions related to Islamic Eid Feasts. (Doc. 81, Exhibits e, F.) It is not a list of inmates who were prohibited

from participating in Islamic Eid Feasts due to financial constraints.

                    *b.*        *Lists of Security Level 5 Housing Unit Indigent Muslim Prisoners*

Interrogatory eleven seeks to elicit written notes, computerized data or lists of Security Level 5 Housing Unit indigent status Muslim prisoners who, because of insufficient funds, were prohibited from receiving any optional menu items during the two major Islamic Eid meal trays during the years of 2009 and 2010.  (Doc. 80, at 22.)  Defendants notified plaintiff that no such documents exist.  (Doc. 96, at 14.)  Plaintiff seeks to compel an answer to the interrogatory arguing that the information is "relevant to the subject matter involved in this pending action and likely to lead to the discovery of admissible evidence. . . ." (Doc. 80, at 23.)  In response, defendants represent that they do not maintain records containing the requested information.  As noted *supra*, this Court is unable to compel the production of information that is non-existent.  <u>Susquehanna Commercial Fin., Inc.</u>, No. 09-2012, 2010 WL 4973317, at *6.

## III.    <u>Motion for Sanctions</u>

### A.    Legal Standard

Federal Rule of Civil Procedure 37(b)(2)(A) authorizes a court to impose sanctions on a party who violates an order of the court to "provide or permit discovery."  Sanctions for violation of Rule 37(b)(2)(A) include orders by the court ranging from designating that certain facts be admitted, to prohibiting the disobedient party from supporting or opposing designated claims or defenses, to monetary damages or even the dismissal of all or part of the action. FED. R. CIV. P. 37(b)(2)(A)(I)-(vii).

Whether to impose sanctions for failure to comply with discovery orders is committed to the court's discretion.  See Flaherty v. M.A. Brunder & Sons, Inc., 202 F.R.D. 137, 141 (E.D.Pa. 2001).  Any sanction imposed should be just and must be specifically related to the particular claim or claims at issue in the order to provide discovery violated by the offending party.  Ins. Corp. of Ireland, Ltd. v. Compagnie Des Bauxites, 456 U.S. 694, 707 (1982).  The Court is to assess the culpability of the offending party and the prejudice to the party seeking sanctions.  See Estate of Spear v. Commissioner of Internal Revenue, 41 F.3d 103, 111 (3d Cir. 1994).  In so doing, Federal Rule of Civil Procedure 37(b)(2) provides a variety of sanctions which a court may impose.

### B.      Analysis

Plaintiff seeks to impose sanctions on defendants for failure to comply with this Court's Order of September 12, 2012.  (Doc. 71.)  He states that "Defendants' counsel knowingly is abusing Local Rule 7.7 and court procedures due to her failure to respond and/or provide him with the existing main specificity portions of his First, Second and Third Discovery Requests, as well as his First, Second and Third Interrogatories within 14-days time frame prescribed.  Plaintiff assert [sic] that this arbitrary practice serves no purpose other than to hinder him from identifying the needed discovery materials and preparing a meaningful and effective summary judgment motion with the court."  (Doc. 82, at 2.)  He asserts that this is sufficient proof for this Court to enter a sanction.

In the matter *sub judice*, sanctions are not warranted.  In the first instance, as is evident from the above, defendants advanced appropriate objections to a number of plaintiff's

19

requests for document production and interrogatories.  Although defense counsel concedes that she did not timely respond to plaintiff's motion to compel, she explains that during the relevant time period, she had "been out of her office extensively dealing with serious family and medical issues."  (Doc. 98, at 1-2.)  Further, plaintiff has only been prejudiced to the extent that disposition of his motion to compel has been minimally delayed by counsel's conduct.  Accordingly, the motion for sanctions will be denied.

**IV.    Motions for an Extension of Time to File a Brief in Opposition to Defendants' Motion for Summary Judgment and a Statement of Material Facts**

Currently pending are plaintiff's motions for an extension of time to file a brief in opposition to defendants' motion for summary judgment and a statement of material facts. (Doc. 109-119.)  These motions will be granted and plaintiff will be afforded time to file a oppose to defendants' motion for summary judgment (Doc. 85) and to file a statement of material facts (Doc. 103).

**V.**     <u>**Conclusion**</u>

Based on the foregoing, plaintiff's motion to compel (Doc. 80) will be granted in part and denied in part.  Plaintiff's motion for sanctions (Doc. 82) will be denied.  Plaintiff's motions for an extension of time (Doc. 109-119) to file a brief in opposition to defendants' motion for summary judgment and a statement of material facts will be granted.

An appropriate Order follows.

**BY THE COURT:**

<u>**s/James M. Munley**</u>
**JUDGE JAMES M. MUNLEY**
**United States District Court**

Dated:   July 17, 2013

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD BANKS,** | : | **CIVIL NO. 3:CV-10-1480** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **SUPERINTENDENT JEFFREY A.** | : | |
| **BEARD, et al.,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>ORDER</u>

**AND NOW**, to wit, this 17 day of July 2013, in accordance with the foregoing memorandum, it is hereby **ORDERED** as follows:

1. Plaintiff's motion to compel (Doc. 80) is GRANTED IN PART and DENIED IN PART.

2. The motion is GRANTED as follows:

    a. Defendants shall NOTIFY the Court within on or before July 30, 2013, as to whether they would be willing to stipulate that plaintiff has been diagnosed by prison psychiatrists with "schizoaffective disorder" or any other serious mental illnesses disorders.

    b. Defendants shall PRODUCE to plaintiff, on or before July 30, 2013, a list containing a breakdown of the forty-two religion grievances by category (religious special foods, items, services and accommodations) and year.

3. The motion is DENIED in all other respects.

4. Plaintiff's motion for sanction (Doc. 82) is DENIED.

5. Plaintiff's motions for an extension of time to file a brief in opposition to defendants' motion for summary judgment and to file a statement of material facts (Doc. 109-119) are GRANTED as follows:

a.    Plaintiff shall file on or before August 16, 2013, a brief in response to defendants' motion for summary judgment.

b.    Plaintiff shall file on or before August 16, 2013, a statement of material facts specifically responding to the numbered paragraphs in defendants' statement of material facts (Doc. 103).  See L.R. 56.1.

c.    The statement of material facts shall include specific references to the parts of the record that support the statements and shall comply in all respects with Local Rule 56.1.

d.    Failure to timely file a statement of material facts in accordance with Local Rule 56.1 will result in the facts set forth in defendants' statement of material facts (Doc. 103) being deemed admitted.  See L.R. 56.1.

**BY THE COURT:**


**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**